UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-96-GWU

KAYLA M. APPLEGATE,                                                    PLAINTIFF

VS.                       **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                  DEFENDANT

**INTRODUCTION**

Kayla Applegate brought this action to obtain judicial review of an unfavorable administrative decision on the redetermination of her Supplemental Security Income (SSI) eligibility upon reaching adulthood. The case is before the undersigned on cross-motions for summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.     Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.     If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.     The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

11-96 Kayla M. Applegate

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional

11-96  Kayla M. Applegate

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

Applegate was originally awarded Child's SSI on a March, 1995 application. (Tr. 14, 104-108). A redetermination of her disabled status under the adult disability standards was initiated following her 18th birthday. (Tr. 14). In October of 2009 after a lengthy review process, an Administrative Law Judge (ALJ) concluded that the claimant, a 21-year-old woman with a "limited" education and no past relevant work history, suffered from impairments related to borderline intellectual functioning/mild mental retardation. (Tr. 16, 21). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform work at all exertional levels, restricted by a number of mental limitations. (Tr. 19-20). Since the available work was found to constitute a significant number of jobs

5

in the national economy, Applegate could not be considered totally disabled after June 1, 2007.  (Tr. 21-22).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 22).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Martha Goss included such non-exertional restrictions as a limitation to performing only simple repetitive work tasks in a low stress, fairly object-focused environment without excessive productivity demands with an initial demonstration of the task to perform and a restriction to jobs in which changes in the work setting would be infrequent and gradual.  (Tr. 413).  The ALJ emphasized that the individual would be able to interact appropriately with coworkers and supervisors in such a setting.  (Tr. 413).  In response, Goss identified a significant number of jobs which could still be performed.  (Tr. 413-414).  Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Applegate's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Applegate's mental condition.  Psychologist Courtney Spear examined the plaintiff and diagnosed mild mental retardation in the area of perceptual/performance and borderline intelligence in the

verbal area. (Tr. 349). Spear noted that while the claimant would have difficulty with complex instructions, she would be able to perform simple, repetitive tasks and relate appropriately to others including supervisors and coworkers. (Tr. 350). Applegate would have some difficulty dealing with stress and changes from task to task and would likely need some work readiness training. (Id.). The hypothetical factors were consistent with this opinion.

Psychologist Laura Cutler reviewed the record and opined that Applegate would be "moderately" limited in dealing with detailed instructions, maintaining attention and concentration for extended time periods, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, and responding appropriately to changes in the work setting. (Tr. 365-366). These restrictions are arguably compatible with those found by the ALJ and the plaintiff has not raised an issue concerning any discrepancies between these limitations and those presented in the hypothetical question.

The ALJ properly concluded that Applegate did not suffer from a "severe" physical impairment. During the administrative hearing, the plaintiff denied suffering from any physical problems. (Tr. 387). The claimant submitted no medical evidence relating to a physical condition. (Tr. 1-5). Therefore, the court finds no error.

Applegate argues that the ALJ erred in concluding that she did not meet the requirements of Section 12.05C of the Listing of Impairments concerning mental

impairments. This Listing requires a claimant to produce "a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." C.F.R., Part 404, Subpart P, App. 1, Section 12.05C. The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence supports onset of the impairment before age 22." 20 C.F.R., Part, 404, Subpart P, App. 1, Section 12.05. Thus, to satisfy the requirements of Section 12.05C, a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

In the present action, intelligence testing administered by Spear revealed a verbal IQ score of 73, a performance IQ score of 63 and a full scale IQ score of 66.[1] (Tr. 348). The performance and full scale IQ scores are within Listing range and, so, this requirement is met. The plaintiff's disability finding as a child was based upon mild mental retardation with her condition being found to meet the requirements of Section 112.05C by Psychologist Jay Athy during a redetermination of disability in June of 2002. (Tr. 339). The ALJ found that the claimant did not

---

[1] The administrative regulations provide that when more than one IQ score is derived from testing, the lowest is used for consideration of 12.05. 20 C.F.R. § 12.00(D)(6).

8

suffer from another mental or physical impairment and, so, the Listing requirements of 12.05C were not satisfied. (Tr. 18). This finding appears proper. The record clearly does not establish the existence of a physical impairment. Applegate argues that Spear's diagnosis of borderline intelligence in the verbal area would satisfy the requirement of another mental impairment and cites Salmi v. Secretary of Health and Human Services, 774 F. 685 F.693 (6th Cir. 1985) in support of this assertion. However, as noted by the defendant, this case merely stands for the proposition that mild mental retardation can be considered a "severe" impairment and not that mild mental retardation and borderline intelligence are separate and distinct impairments. Rather than distinct mental conditions, mild mental retardation and borderline intelligence are merely differences in degree concerning the same basic condition. Therefore, the court must reject the claimant's argument.

Applegate asserts that her mental problems met the requirements of Section 12.05D. This Listing section also requires a valid IQ score between 60 and 70 and at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining attention, concentration, persistence, or pace; or (4) repeated episodes of decompensation. C.F.R., Part 404, Subpart P, App. 1, Section 12.05D. As previously noted, the plaintiff has the required IQ scores. However, the second part of the Listing is clearly not established. Cutler, the reviewer, rated the claimant's degree of limitation in these areas as mild for activities of daily living and

maintaining social functioning, moderate in maintaining concentration, persistence or pace and none in episodes of decompensation.  (Tr. 361).  This finding was not contradicted in the record by the opinion of another mental health professional.  The claimant asserts that the ALJ erred by failing to rely upon the claimant's testimony and that of the other lay witnesses as to her ability to function.  However, subjective complaints would still need to be supported by  some objective medical data.  Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).  In the present action, the only mental health professional of record did not believe Applegate's condition was of Listing severity.  The claimant also cites findings made by the Hearing Officer who initially considered the issue of whether her mental condition met the requirements of adult disability. (Tr. 68-76).  However, this was not the final decision of the administration since the action was later appealed to an ALJ, and, so, these findings had no binding effect.  Therefore, the court must reject Applegate's argument.

      Finally, Applegate asserts that the ALJ erred by failing to make a credibility finding with regard to the testimony of Lisa Redden, a neighbor and sister of her boyfriend.  The ALJ acknowledged the testimony of Redden but made no other finding with regard to her statements. (Tr. 14).  While Redden did report that the plaintiff needed help in caring for her boyfriend's children, the witness also noted that she was able to perform household activities such as laundry and cleaning the house. (Tr. 406-408).  This testimony was similar to that offered by the claimant

11-96 Kayla M. Applegate

which the ALJ found was not fully credible. (Tr. 20). Therefore, any error would appear harmless.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 23rd day of November, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**